JOSEPH A. TOLMAN *vs.* THE MANUFACTURERS INSURANCE
COMPANY.

A policy of insurance against fire contained a proviso, allowing the insurers, at their
election, instead of paying a loss in money, to replace the property lost or dam-
aged, with other of the like kind and quality, within sixty days after notice of the
loss or damage: after a loss under such a policy, the assured, by an order thereon,
directed the loss to be paid to another, and the insurers assented thereto : it was
held, that such order and assent operated only as an assignment of the claim of
the assured under the policy, without affecting the right of the insurers to replace
the property lost or destroyed, or to pay the amount of the loss in money, at their
election.

THIS cause was tried before *Shaw*, C. J., from whose report
thereof, for the consideration of the whole court, the follow-
ing facts appeared.

Charles Wellington, being the owner of an unfinished
dwelling-house, in Charlestown, which was under a mortgage
for $800, sold and conveyed his interest therein, for $200, to
Robert Kellen, who was to pay the sum due on the mortgage.

On the 3d of May, 1845, the defendants, by a policy duly
executed, insured Kellen against a loss of the premises by
fire, in the sum of $1000, for one year. The policy con-
tained a clause, by which it was provided, that the sum
insured should be paid " to the said Kellen, within sixty
days after proof of such loss or damage, unless within sixty
days after notice of such loss or damage, the said company
shall have replaced the said property, lost or damaged, with
other of the like kind and quality, at the election of the said
company."

The building insured was destroyed by fire on the 27th or
28th of May, 1845, and due notice of the loss was given to
the defendants. Shortly afterwards, Kellen made an order,
in writing, indorsed on the policy, directing the defendants to
pay the loss under the same to the plaintiff. This arrange-
ment was assented to by the president of the defendants,
acting for them, by an indorsement in writing on the policy.
The order and assent are as follows:

"May 29, 1845. Pay the loss under the within policy to Joseph A. Tolman.                                    Robert Kellen.

Assented to.   C. W. Cartwright, Pres."

The plaintiff demanded payment of the loss, at the office of the defendants, who refused to pay the same; but the president said, that he was going to rebuild the house; and the defendants did, accordingly, replace the building destroyed with another of the like kind and quality, and of equal value.

The plaintiff brought this action on the policy to recover the amount of the loss.

It was contended, on the part of the plaintiff, that the assent of the president (whose authority in this respect was not denied) was a waiver, by the company, of their right to rebuild, and an agreement to pay the loss in money to the plaintiff, sufficient to enable him to maintain this action therefor, in his own name.

On the part of the defendants, it was contended, that this assent was not an election to pay the money, or a waiver of their right to rebuild; but that they retained that right under the policy, as well after the assignment as before.

The judge ruled: 1. That the indorsement on the policy, and the assent thereto by the president of the defendants, did not amount to an election to pay the money and waive the right to rebuild, but was merely an assent to the assignment by the plaintiff; that the defendants had notwithstanding a right to rebuild; and, having rebuilt, that was a satisfaction of the loss.

2. That the order indorsed on the policy was not in the nature of a draft for money, and that the assent thereto by the defendants was not an acceptance, upon which an action would lie by the plaintiff against the defendants.

3. That the indorsement by the assured was an authority to the plaintiff to settle with the defendants, and their assent thereto was an admission and acknowledgment of that authority; or it amounted to an assignment of a chose in action, which did not authorize the plaintiff to bring an action in his own name.

A nonsuit was thereupon entered, subject to the opinion of

the whole court.  If the directions were right, judgment was to be entered on the nonsuit for the defendants : otherwise, the defendants were to be defaulted, and the case to be referred to an auditor to determine the amount due, or a new trial was to be had, as the court might order.

The cause was argued at a former term by *A. B. Merrill*, for the plaintiff, and *C. A. Welch*, for the defendants.

Forbes, J.   The view which the court take of this case makes it necessary to consider only the ruling first stated ; because, if the order indorsed upon the policy ought not to receive the construction put upon it by the plaintiff, the action cannot be maintained.   The plaintiff insists that it is an order for the payment of money absolutely ; that it has no connection with the policy, except by way of reference to it, for the purpose of ascertaining the amount to be paid, and, having been accepted, is binding upon the defendants ; that it does not in fact differ in any essential particular from a common order for money.

The stress of the argument for the plaintiff rests upon the import of the word " pay," as used in the indorsement.   It is contended, that the word, in this connection, can imply nothing but an acquittal or discharge of the obligation in money, and that such is the meaning, force, and effect of the term in this and similar instruments.   If this construction be correct, the defendants, having agreed to compensate the loss in money, may fairly be presumed to have waived their right to replace the building.   But we are not satisfied that this construction is correct, or that the meaning of the term is restricted, in the manner supposed, by the *jus et norma loquendi*.   An obligation to deliver merchandise is familiarly said to be *paid* by a delivery of the merchandise, and the use of the term, in this connection, is common, and strictly appropriate.   Notes payable in goods or money, at the election of the promisor, are not of unfrequent occurrence.   " Pay the within " to a third person, indorsed upon a note of this description, together with a delivery of the note, would operate as an assignment in equity, and if assented to by the

promisor, might lay the foundation for an action in the name of the assignee. But this would not change the nature of the original promise ; the note would continue to be payable in goods or money, at the option of the maker. Yet, if the effect of the word "pay" be such as the plaintiff contends, the election of the promisor would be at an end, and the note must be paid in money.

"To pay," is defined by lexicographers, "To discharge a debt, to deliver a creditor the value of a debt, either in money or in goods, to his acceptance or satisfaction, by which the obligation of the debt is discharged ; to discharge a duty created by a promise, or by custom, or by the moral law ; to fulfil ; to perform what is promised." Webster's Dict.

To pay, therefore, is to discharge an obligation by a performance according to its terms or requirements: if the obligation be for money, the payment is made in money ; if for merchandise or labor, a delivery of the merchandise or a performance of the labor is payment; or if for the erection of a building, performance according to the terms of the contract is payment. The indorsement in this case is not, "Pay the loss in money," or even, "Pay the amount of the loss," but simply, "Pay the loss." We consider the effect of this indorsement to be the same as if written out more fully in this manner : "Pay or discharge the obligation arising from the loss under the policy to, or for the benefit of, Joseph A. Tolman ; " in other words, that it operated as an assignment to the plaintiff of Kellen's claim under the policy, without affecting, in the least, the right of the defendants to replace the building, or to pay the amount of the loss in money, at their election, according to the terms of the policy. The defendants having replaced the building, this action cannot be sustained.

It appears from the papers on file, that on the 12th of April, 1845, Kellen mortgaged the premises to the plaintiff, to secure the sum of five hundred dollars. The plaintiff, then, was a second mortgagee, and this fact discloses an inducement, on the part of the plaintiff, to obtain the control of the

policy ; for if the defendants had paid Kellen the amount of the loss in money, the plaintiff, so far as appears, would have had no means of compelling him to expend it in the erection of another building ; and to that extent the plaintiff's security would have been impaired : whereas the assignment placed the plaintiff in a situation in which he must be benefited, whether the defendants erected another building or paid the amount of the loss in money.

The court are of opinion that the nonsuit must stand, and, according to the agreement of the parties, judgment is to be entered for the defendants.